IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHANE HALE, et al.,

                Plaintiff,                Case No. 3:03 CV 7619

   -vs-                                           MEMORANDUM OPINION

BAUGHMAN TILE CO., INC.,

                Defendant.

KATZ, J.

This matter is before the Court for decision on the remaining portion of Defendants' Motion for Summary Judgment (Doc. No. 50). In a memorandum opinion dated January 19, 2005 (Doc. No. 76), the Court ruled on the motion as to Counts One and Two of Plaintiffs' Complaint, but reserved ruling on the motion as to Count Three until the Defendants' had deposed Plaintiffs' Witness Jill Sheaks and filed a supplemental reply (Doc. No. 81). After Defendants had done so, and with leave of the Court (Doc. No. 87), Plaintiffs filed a Sur-Reply (Doc. No. 88), which Defendants have moved to strike (Doc. No. 85). For the reasons that follow, the Court denies Defendants' Motion for Summary Judgment as to Count Three and denies the Motion to Strike.

## BACKGROUND

Defendant Baughman Tile Co. ("BTC") hired Plaintiff Shane Hale ("Mr. Hale") in September of 1998. BTC makes field tile and related products in Paulding, Ohio. Mr. Hale worked third shift, from 11 p.m. to 7 a.m. As part of their employment relationship, BTC provided medical insurance to Mr. Hale.

In 1999, Plaintiff Kelli Hale ("Mrs. Hale") suffered a stroke and became a quadriplegic. Mr. Hale requested time off from work to care for his wife and was granted leave from August 7, 1999, until mid-December, 1999. Thereafter, Mr. Hale missed several intermittent days of work to take Mrs. Hale to doctors' appointments in Columbus, Ohio, and, once, to the emergency room there. Because he worked at night, it was Mr. Hale's custom to miss work the night before his wife's scheduled doctors' appointments, so he could sleep before driving her to Columbus. Mr. Hale claims he accompanied Mrs. Hale to her appointments so he could lift her in and out of her wheelchair. These incidents caused Mr. Hale to miss work on May 8, 2000, July 20, 2000, October 19, 2000, February 19, 2001, February 27, 2001, March 19, 2001, and November 19, 2001. BTC apparently considered these absences "unexcused." BTC's president, Gene Baughman ("Baughman") warned Mr. Hale on February 10, 2001, that if Mr. Hale had another unexcused absence, he would be fired.

BTC laid off Mr. Hale from October 16, 2001, to November 11, 2001. When BTC called Mr. Hale back to work, he informed Candy Minck ("Minck"), a company secretary, and the plant manager, Al Brown ("Brown"), that he would need November 19, 2001, off to take his wife to the doctor. In accordance with the usual BTC policy for employee absences, under which only Gene Baughman could approve leave, Brown told Mr. Hale that he would take the request to Baughman. Baughman denied the leave, claiming BTC was operating on a "skeleton crew."

On November 15, 2001, Brown informed Mr. Hale that Baughman had denied his request. Brown claims Mr. Hale then became angry and swore at him. Mr. Hale claims Brown did not inform him of the reason Baughman denied his request. Thereafter, Mr. Hale claims two coworkers, Tom Edwards and Jeff Huie, informed him they would cover his shift on November

19, 2001. (It was customary for absences to be covered by one employee from the previous shift staying late and one employee from the subsequent shift coming in early.) However, Brown claims he never asked these employees to cover for Mr. Hale.

On November 19, 2001, Mr. Hale informed the third shift supervisor, Matt Brubaker ("Brubaker"), that he would not be at work that night. Mr. Hale missed his shift that began on November 19, 2001 and took his wife to Columbus on November 20, 2001. Upon their return, the Hales received a telephone message from Minck informing Mr. Hale that his "services [were] no longer needed." Mr. Hale called Gene Baughman at home to protest, but claims Baughman informed him that his employment with BTC was terminated and that Baughman could not allow him to continue missing work for his wife's doctors' appointments. Despite this, Mr. Hale attempted to go to work that evening, but Brubaker sent him home.

After Mr. Hale's termination, BTC switched health insurers from Medical Mutual to Anthem on March 1, 2002, its renewal date for health insurance coverage. The Hales were part of this switch as COBRA participants.

## DISCUSSION

Count Three of the Plaintiffs' Complaint against BTC and Gene Baughman alleges that BTC violated section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, by intentionally terminating him to prevent his access to health benefits, because the insurance was too costly and because Mrs. Hale's medical needs prevented BTC from switching health insurers.

The Court previously ruled on Defendants' summary judgment motion as it related to Counts One and Two, but reserved ruling on Count Three until Defendants could depose Jill

3

Sheaks, on whose affidavit testimony Plaintiffs relied in opposition to Defendants' motion, but whom Plaintiffs neglected to add to their Rule 26 disclosures. The Court granted Defendants the opportunity to address Sheaks's testimony in a supplemental brief, and later granted Plaintiffs leave to respond. The summary judgment motion as to Count Three is now ripe for decision.

*A. Summary Judgment Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

*B. Count Three - ERISA*

Under section 510 of ERISA, an employer may not discharge an ERISA plan participant "for the purpose of interfering with the attainment of any right to which such participant may

5

become entitled under the plan." 29 U.S.C. § 1140. An aggrieved participant may enforce this section under ERISA Section 502, 29 U.S.C. § 1132. *Id*. The Hales claim BTC fired Mr. Hale to prevent his and Mrs. Hale's continued access to health plan benefits, because Mrs. Hale's medical expenses took BTC's premiums to a prohibitively high level and prevented BTC from switching to a new health insurance company.

To succeed on their claim, Plaintiffs must show that BTC "had a specific intent to violate ERISA." *Rush v. United Techs., Otis Elevator Div.*, 930 F.2d 453, 457 (6th Cir. 1991). However, Plaintiffs need not show that interference with their ERISA benefits was BTC's sole motivation, only that it was "a motivating factor" in BTC's decision to fire Mr. Hale. *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir. 1992) (citing *Meredith v. Navstar Int'l Transp. Co.*, 935 F.2d 124, 127 (7th Cir. 1991)).

In the absence of direct evidence of improper motive, courts generally follow a *McDonnell-Douglas*-style, burden-shifting analysis. *Id*. The Sixth Circuit requires that:

> [T]o avoid summary judgment on a section 1140 claim, a plaintiff must show the existence of a genuine issue of material fact that there was: "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled."

*Id*. (quoting *Gavalik v. Cont'l Can Co., U.S.A.*, 812 F.3d 834, 852 (3d Cir. 1987)). If the plaintiff establishes a prima facie case, the defendant must present evidence of a legitimate, non-discriminatory reason for its action. *Id*. If the employer does so, "the plaintiff must either prove that the interference with . . . benefits was a motivating factor in the employer's actions or prove that the employer's proffered reason is unworthy of credence." *Id*.

In this case, the Hales have presented evidence sufficient to create a genuine issue of fact as to whether BTC fired Mr. Hale, at least in part, for the purpose of interfering with his health

benefits, thereby establishing a prima facie case and satisfying Plaintiffs' burden to respond to BTC's claimed legitimate reason.

Specifically, the Hales have submitted the sworn testimony of Jill Sheaks, BTC's former secretary, who testified that BTC's president, Gene Baughman, told her that: because Mrs. Hale was receiving health benefits, BTC's health insurance premiums were increasing; Baughman was unsure whether BTC would be able to afford the insurance; and other insurance companies would not carry BTC while Mrs. Hale was receiving benefits. (Doc. No. 57-4, Sheaks Affidavit, ¶¶ 5-7).[1] Additionally, Baughman complained to Sheaks about Mr. Hale's absences to take his wife to doctors' appointments. *Id.* at ¶ 9. Sheaks heard Baughman say, referring to Mr. Hale, "I should just fire him." (Doc. No. 82, Sheaks Dep., p. 100). From these statements, a jury could conclude that Baughman and BTC terminated Mr. Hale with the specific intent to get him off BTC's health-care-benefit rolls.

Though the Court expressly denied Defendants' motion to strike Sheaks's affidavit, except as to paragraph eight, (Doc. No. 76, pp. 17-18), Defendants caption their supplemental brief as a "Supplemental Reply Memorandum in Support of [Their] Motion to Strike," as opposed to a supplement to their summary judgment motion, and spend the bulk of their brief again arguing that Jill Sheaks lacks personal knowledge about Mr. Hale's termination. *See* (Doc. No. 81). This Court has already explained that Sheaks's affidavit demonstrates that she has personal knowledge of Gene Baughman's statements to her, which is all that is required. The jury is entitled to draw reasonable inferences from those statements, and, as explained above, the jury could reasonably

---

[1] The Court has already determined that Baughman's statements to Sheaks about BTC's health insurance policies do not constitute hearsay, under the exemption for party-opponent admissions, Fed. R. Evid. 801(d)(2). (Doc. No. 76, p. 18).

conclude from them that Baughman's intent when he fired Mr. Hale was to cut off his health benefits. Moreover, as Plaintiffs point out, Defendants' concerns about the circumstances surrounding the execution of Sheaks's affidavit are matters best addressed on cross-examination. Defendants' motion for summary judgment is denied as to Count Three.

*C. Motion to Strike*

Defendants move to strike Plaintiffs' sur-reply on the grounds that this Court's memorandum opinion providing for a supplemental reply brief from Defendants did not authorize a sur-reply from Plaintiffs. However, Plaintiffs sought leave to file their sur-reply, which this Court granted (Doc. No. 87). The Motion to Strike is denied.

## CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment (Doc. No. 50) is denied as to Count Three, and Defendants' Motion to Strike Plaintiffs' Sur-Reply (Doc. No. 85) is also denied.

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
SENIOR U. S. DISTRICT JUDGE